# AFFIDAVIT

I, Richard T. Schmitt, Special Agent ("SA"), Drug Enforcement Administration ("DEA"), Youngstown Resident Office ("YRO"), being duly sworn, state that:

1. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, the offenses enumerated in 18 U.S.C. Section 2516.

2. I have been a SA with the DEA since July 8, 2018. As a SA with the DEA, I completed the 16-week DEA Basic Agent Training ("BAT") course in Quantico, Virginia. As part of the BAT course, I received training in narcotic investigations, narcotic interdiction, identification of narcotics, search and seizure issues, surveillance techniques, preparation and execution of narcotic search warrants, debriefing of defendants, witnesses, and cooperating sources. As of December 23, 2018, I have been assigned to the DEA-Youngstown Resident Office (YRO), Task Force Group #D-48. Prior to my employment with the DEA, I was employed as a Police Officer by the City of Portage, Indiana for approximately six and a half years and graduated from the Northwest Indiana Law Enforcement Academy (NILEA) in Hobart, Indiana.

3. I have been involved in numerous narcotics-related arrests, have executed search warrants that resulted in the seizure of narcotics or dangerous drugs, and have supervised the activities of numerous informants and cooperating witnesses who have provided information and assistance resulting in drug buys, searches, and arrests. Based on the above experience, I am familiar with the *modus operandi* of persons involved in the illicit distribution of controlled substances, as well as the terminology used by persons involved in the illicit distribution of controlled substances. I am aware that persons involved in the illicit distribution of controlled

substances nearly always attempt to conceal their identities and the locations where drugs are sold and stored, which are frequently at locations different from where they reside. I am also aware that persons involved in the illicit distribution of controlled substances use vehicles to transport drugs to and from locations where drugs are stored. I also am aware that drug traffickers, when preparing vehicles for travel and transport and during the actual travel and transport, frequently use counter-surveillance tactics to avoid detection and apprehension by law enforcement, including storing their vehicles in locations where they can be privately accessed while remaining hidden from observing law enforcement. It is likewise essential that such organized groups meet to formulate plans concerning narcotics or other illegal activities, and to divide their illegal proceeds.

4. On a regular basis, I review law enforcement bulletins and intelligence reports regarding narcotic trafficking and smuggling, and remain in communication with counterparts in order to remain up to date with modern techniques and trends used by narcotic traffickers in the domestic and international arena.

5. Based upon my training, experience and discussions with other Special Agents and law enforcement officers concerning the distribution of controlled substances, I know:

a) That drug traffickers very often place assets in names other than their own to avoid detection of these assets by government agencies;

b) That drug traffickers very often place assets in corporate entities in order to avoid detection of these assets by government agencies;

c) That even though these assets are in other persons' names, the drug dealers actually own and continue to use these assets and exercise dominion and control over them;

d) That drug traffickers often place drugs and assets in hidden locations, known as "safe houses,"

to protect and conceal the location from government agencies, thereby avoiding conducting transactions at these places, but often times in very close proximity to these locations; and

e) That drug traffickers frequently use automobiles to transport or hide drugs and drug proceeds.

## PROBABLE CAUSE

6. On May 29, 2018, Portage County Drug Task Force (PCDTF) Confidential Source CS-Scissor, advised that he was capable of purchasing approximately two (2) ounces of Methamphetamine (Ice) from Cassandra BADINI. It should be noted that whether male or female, CS-Scissor while be identified using masculine pronouns.

7. On May 30, 2018, CS-Scissor made a controlled purchase[1] of approximately 114 grams of Methamphetamine (Ice) from BADINI and Allison LOWE for approximately $1,210.00 Official Authorized Funds (OAF) in Portage County, Ohio. Prior to the controlled purchase, CS-Scissor placed a consensually monitored and recorded telephone call to BADINI regarding the transaction. CS-Scissor and BADINI agreed to meet at the McDonalds, located at 418 West Main St., Ravenna, Ohio. Prior to the controlled purchase, law enforcement established surveillance in the vicinity of the McDonald's.

8. At approximately 1:30 p.m., TFO Kevin Nicolino observed a silver Toyota Corolla, bearing Ohio registration- HLF2414, enter the east side parking lot of McDonald's. At that time, TFO Nicolino observed CS-Scissor exit PCDTF Detective Eric Centa's (who was acting in an undercover capacity) vehicle. TFO Nicolino observed CS-Scissor walk towards the silver Toyota

---

[1] Unless otherwise specified, the controlled drug purchases/payments discussed in this affidavit were conducted in the following manner: the source purchasing the drugs or paying for the drugs, and the source's vehicle (if the source drove himself,) were searched for drugs and money prior to the controlled purchase/payment. A recording device was placed on the person of the source and the source was then provided with law enforcement funds for the purchase. The source was given instructions by law enforcement personnel to make the drug purchase/payment from/to specific subjects. Upon completion of the drug purchase/payment, the source and source's car were again searched, and the evidence obtained from the source was retrieved. Furthermore, the source was followed to and from the meeting location and kept under constant surveillance.

Corolla. While CS-Scissor was approaching the Toyota Corolla, PCDTF Detective Centa advised other units that he observed three people in the Toyota Corolla. TFO Nicolino then observed CS-Scissor enter the rear driver's side seat of the Toyota Corolla. At approximately 1:31 p.m., TFO Nicolino observed CS-Scissor exit the Toyota Corolla and then re-enter PCDTF Detective Centa's vehicle.

9. PCDTF Detective Centa then drove himself and CS-Scissor to a neutral location, arriving at approximately 1:39 p.m. At the neutral location, CS-Scissor transferred approximately 114 grams of Methamphetamine (Ice) to TFO Nicolino, as observed by SA Stephen Rapp. TFO Nicolino then field tested the purchased substance and it tested positive for the presence of Methamphetamine.

10. While at the neutral location, CS-Scissor advised TFO Nicolino, SA Rapp, and PCDTF Detective Centa that he had purchased the Methamphetamine from BADINI, CS-Scissor stated that when he entered the Toyota Corolla, he sat in the rear driver's side seat, behind the driver. CS-Scissor identified BADINI as the driver of the vehicle, identified **LOWE** as the individual sitting in the front passenger seat, and identified BADINI's grandmother as sitting in the rear passenger's side seat. CS-Scissor advised that upon entering the vehicle, he gave BADINI the $1,210.00 OAF and stated that **LOWE** then gave Exhibit 1 to CS-Scissor. CS-Scissor said after the transaction took place, he exited the Toyota Corolla and re-entered PCDTF Detective Centa's vehicle.

11. On August 23, 2018, PCDTF Confidential Source CS-Hatchet, advised that he was capable of purchasing approximately six stolen guns from **LOWE**. It should be noted that whether male or female, CS-Hatchet while be identified using masculine pronouns.

12. On August 24, 2018, CS-Hatchet made a controlled purchase of three shotguns from **LOWE** for approximately $300.00 OAF in Portage County, Ohio. On that date, at approximately 2:54 p.m., TFO Nicolino and PCDTF Detective Domer followed CS-Hatchet to 5309 Waterloo Rd., Atwater, Ohio 44201, which is the residence of **LOWE's** grandparents. CS-Hatchet arrived at the residence at approximately 3:08 p.m., and then met with **LOWE** and Curtis ROLLINS. **LOWE** then showed CS-Hatchet the three shotguns and confirmed the purchase price of $300.00 for the shotguns. CS-Hatchet then handed the $300.00 OAF to **LOWE**, who in turn handed a portion of the money to ROLLINS. **LOWE** informed CS-Hatchet that the three shotguns were owned by an elderly male that previously lived at the residence, but had recently been moved to a nursing home and would never know the shotguns had been stolen.

13. At approximately 3:24 p.m., CS-Hatchet and ROLLINS loaded the shotguns into CS-Hatchet's vehicle. At approximately 3:25 p.m., CS-Hatchet was observed by surveillance units exiting the residence.

14. At approximately 3:38 p.m., CS-Hatchet arrived at a neutral location, where he transferred custody of the three (3) shotguns to TFO Nicolino and PCDTF Detective Domer. CS-Hatchet advised that the other stolen shotguns that **LOWE** had previously mentioned were in poor condition and CS-Hatchet advised that he was told the shotguns were not worth purchasing. The three shotguns CS-Hatchet purchased were later checked through law enforcement databases and had not been reported stolen. All three shotguns were manufactured outside the State of Ohio.

15. **LOWE** was previously convicted of Burglary, an offense punishable by more than one year in prison in the State of Ohio. is a convicted felon and is currently on probation through the State of Ohio. **LOWE** was convicted of Burglary in 2014 in Portage County, Ohio.

## CONCLUSION

16. Based upon the above listed facts and circumstances, there is probable cause to believe that Allison Lucinda Mae **LOWE** did knowingly distribute Methamphetamine/Ice, in violation of Title 21, United States Code, Section 841(a)(1). There is also probable cause to believe that **LOWE** possessed firearms, in violation of Title 18, United States Code, Section 922(g)

_____
Richard T. Schmitt, Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me this 28 the day of March 2019.

_____
Honorable George J. Limbert
United States Magistrate Judge
Northern District of Ohio
Eastern Division